**GRUMMAN ECOSYSTEMS CORPO-
RATION, Plaintiff,**

v.

**GAINESVILLE–ALACHUA COUNTY RE-
GIONAL ELECTRIC, WATER AND
SEWER FACILITIES BOARD et al.,
Defendants.**

Civ. A. No. 75–23.

United States District Court,
N. D. Florida,
Gainesville Division.

Oct. 1, 1975.

V. Keith Young, Orlando, Fla., for plaintiff.

Thomas E. Abernathy, Smith, Currie & Hancock, Atlanta, Ga., for defendant Norflor–Sunshine.

Clinton Ashmore, U. S. Atty., Tallahassee, Fla., Thomas H. Ries, Asst. Regional Counsel, Environmental Protection Agency, Atlanta, Ga., for defendant Train.

Osee Fagan, A. Bice Hope, Norman J. LaCoe, Gainesville, Fla., for defendants City of Gainesville and Gainesville-Alachua County Regional Board.

## OPINION

STAFFORD, District Judge.

This case involves a challenge of bid procedures by an unsuccessful bidder. The plaintiff, Grumman Ecosystems Corporation (Grumman), challenges the award of a construction contract for the Kanapaha Wastewater Treatment Plant by the City of Gainesville, Florida. The defendants are: Norflor Construction Corporation–Sunshine Peninsula, Inc. (Norflor); The City of Gainesville, Florida (City); the Gainesville-Alachua County Regional Electric, Water and Sewer Utilities Board (Regional Board); and Russell E. Train, as Administrator of the Environmental Protection Agency (EPA). The City awarded the construction contract to Norflor, and that award was affirmed by EPA in an administrative appeal taken by Grumman. Grumman here challenges the award to Norflor on three grounds, set forth respectively in Counts I, II and III of its Amended Complaint. First, Grumman contends that Norflor's bid was unresponsive at the time of bid opening and that the award to Norflor was therefore in violation of EPA regu-

lations. *See* 40 CFR 35.938(f),(h).[1] Second, Grumman asserts that the City violated EPA regulations by not providing written findings substantiated by legal and engineering opinions. *See* 40 CRF 35.939(a). Third, Grumman asserts that EPA violated its own regulations and those of the Comptroller General by notifying the City on August 1, 1975, that it was free to proceed with the execution of the contract with Norflor, when in fact EPA was aware of a pending appeal of its administrative decision to the Comptroller General. *See* 4 CFR 20.4; 40 CFR 35.939(d). Grumman seeks a declaratory judgment that the City and the Regional Board acted arbitrarily and capriciously in awarding the contract to Norflor, that the award to Norflor is void, that EPA acted arbitrarily in affirming the award, and that EPA violated its own regulations and those of the Comptroller General in subsequently allowing the City to proceed to execution of the contract at a time when an appeal to the Comptroller was pending. Grumman also seeks to enjoin funding and construction of the project and to enjoin the City to either award the contract to Grumman or rebid the contract.

The case is before the Court for final hearing, a temporary restraining order and preliminary injunction having previously been denied, for reasons more fully set forth below.

Before proceeding to findings of fact, a brief history of this litigation is in order, since the course of the litigation bears upon the Court's judgment.

This case was begun by an application for Temporary Restraining Order on August 7, 1975. The application was on extremely short notice to opposing parties. The parties were orally advised of the hearing one day in advance, but the complaint was not filed until one hour before commencement of the hearing. The complaint then before the Court contained only the matters now set forth in Count I of the Amended Complaint— allegations relating to the unresponsiveness of Norflor's bid. No mention was made in the complaint or at the hearing of other alleged violations of federal regulations. The application for Temporary Restraining Order was denied for failure to join the City and for failure to present a clear case for such relief.

On August 20, 1975, Grumman served by mail an amended complaint setting forth for the first time Grumman's contentions concerning procedural irregularities by the City and EPA. Notice of a hearing on Grumman's application for preliminary injunction was served by mail on August 21.

The hearing was set for August 27, 1975. At that hearing the Court declined to consider the merits of Grumman's application, for lack of due notice to the defendants under Rule 6 of the Federal Rules of Civil Procedure. Further, the Amended Complaint was not verified nor were supporting affidavits filed, although an officer of Grumman testified as to the status of work then underway on the project in Gainesville.[2] The Court accelerated the matter for fi-

---

1. The regulation states in relevant part:
   "(f) *Bid modifications.* A firm which has submitted a bid shall be allowed to modify or withdraw its bid prior to the time of bid opening.
   (g) *Pubic opening of bids.* Grantee shall provide for a public opening of bids at the place, date and time announced in the bidding documents.
   (h) *Award to the low responsive, responsible bidder.* (1) After bids are opened, they shall be evaluated by grantee in accordance with the methods and criteria set forth in the bidding documents. (2) Unless all bids are rejected, award shall be made to the low, responsive, responsible bidder."

2. At that hearing counsel for all parties stipulated that a certified copy of the administrative record constituted the entire record necessary for a decision on the merits except insofar as the parties wished to present evidence on the relative harm to the parties from the grant or denial of injunctive relief. The administrative record was received in evidence on that stipulation.

nal hearing in accordance with Rule 65(a)(2) of the Federal Rules of Civil Procedure. Final hearing was held on September 22, 1975.

## Findings of Fact

Prior to May 22, 1975, the City promulgated bidding instructions for the construction of the Kanapaha Wastewater Treatment Plant. The plant was to be constructed in Gainesville, Florida. EPA agreed to fund a major portion of the project by a grant, with the rest of the funding to come from local tax revenues. Of critical importance to the project was a Denitrification Filter System, a relatively new and untested piece of hardware. The City therefore required a process guarantee of five elements of the system from the system manufacturer. Initially, the manufacturer was also to be required to post a $250,000 escrow fund to secure the City for modifications in the system if it proved faulty in operation. Those requirements were contained in paragraph DF–03 of the bid instructions.

During the time when bidders were preparing their bids, the filter system manufacturer informed all bidders and the City that it would not provide the $250,000 escrow fund, and further, that it would not guarantee all of the five system components as specified in paragraph DF–03.

On May 22, the City modified the bid by means of "Addendum No. 6", which stated in pertinent part:

"Only those bids providing an escrow account and a process guarantee, both in full accordance with par. DF–03 of these specifications, will be considered as being totally responsive. *Any deviation from Section DF shall be specifically noted and attached to the Bidder's Proposal.*

.    .    .    .    .    .

"In the event that the filter supplier does not furnish such escrow account to the contractor, the contractor must provide the escrow account." (emphasis supplied)

When the bids were opened, Norflor had submitted the apparent low bid. Grumman's bid was $33,000 higher. However, Norflor's bid contained the following handwritten notation:

"Per Addendum No. 6, page B–6, para. B–11, sub para. A–7, our proposal deviates from this section as to the process guarantee. See attached process guarantee by Dravo [the manufacturer], pages 16–18. However, the escrow fund will be supplied by the contractor."

This language is the genesis of the controversy. Grumman contends that by such language Norflor attempted to limit its liability under the escrow fund to those elements of the filter system which the manufacturer would guarantee. Norflor maintained that the language was inserted to strictly comply with the requirement that any deviations from the bidding instructions, paragraph DF, be noted, and that it was intended to assure the City that, despite Dravo's refusal to guarantee the entire filter system, Norflor would do so to the extent of $250,000 by providing the escrow fund.

The City's consulting engineers initially recommended award of the contract to Grumman, taking the position that Norflor's bid was unresponsive. However, the responsiveness of Grumman's bid was never considered by the City authorities.

The City's attorney, on the other hand, was of the opinion that Norflor's bid was responsive.

The language of the bid instructions was confusing. Subsequent to the bid opening *both* Grumman and Norflor sent communications seeking to clarify their bids.

A hearing was held before the Regional Board; at that hearing Grumman had a full opportunity to be advised of the City's position and to be heard. The transcript of that hearing indicates that prior to receipt of Norflor's letter of clarification the City Attorney was of

the opinion that Norflor's bid, though somewhat ambiguous, was responsive. The Board, relying both on that opinion and on Norflor's subsequent letter, awarded the contract to Norflor.

The City did not provide a written summary of its position to Grumman.

Grumman appealed the award to EPA, contending that the City, by considering Norflor's letter, had, in effect, allowed a modification of Norflor's bid, in contravention of 40 CFR 35.938-4.

A hearing was held before the Regional Administrator for EPA, and on July 24, 1975, the Administrator issued his opinion affirming the award to Norflor. The view taken by EPA was that, under EPA regulations, the local agency has wide discretion in determining bid responsiveness and that no clear showing had been made that Norflor's bid was unresponsive under local law or EPA regulations.

On July 29, 1975 Grumman notified EPA by mailgram that an appeal of its decision had been filed with the Comptroller General. The City and Norflor were not so notified by Grumman, nor did EPA notify them of Grumman's appeal. Instead, on July 31, 1975 EPA advised the City in writing that it was free to execute a contract with Norflor. The City entered into the contract on August 1, 1975. At the time of final hearing, Norflor had incurred very substantial contractual commitments relating to its work on the wastewater treatment plant.

### Conclusions of Law

#### A. Jurisdiction and Standing.

■ The Court is of the opinion that jurisdiction exists to resolve this controversy under 5 USC §§ 702, 706, and that the plaintiff has standing to sue. See *Hayes Int'l Corp. v. McLucas*, 509 F.2d 247 (5th Cir., 1975).

In opposing jurisdiction the defendants rely primarily upon *Larson v. Domestic & Foreign Finance Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628

(1949); *Malone v. Bowdoin*, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962) and *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). The thrust of the defendant's position is that sovereign immunity precludes the action insofar as EPA is concerned and that no other federal defendant exists.

In resolving this issue, the Court is confronted with the problem of reconciling the mandates of the Administrative Procedure Act, providing for judicial review of agency action, with the sovereign immunity doctrine. This conflict has been directly addressed in other jurisdictions, with less than definitive results. See *Schlafly v. Volpe*, 495 F.2d 273 (7th Cir., 1974); *Littell v. Morton*, 445 F.2d 1207 (4th Cir., 1961). In *Estrada v. Ahrens*, 296 F.2d 690 (5th Cir., 1961), the Fifth Circuit addressed the issue and explicitly held the judicial review provisions of the Act to be a waiver of sovereign immunity. However, that Court tacitly receded from the broad holding of *Estrada* in *Colson v. Hickel*, 428 F.2d 1046 (5th Cir., 1970).

After reviewing these authorities the Court is convinced that sovereign immunity is not a bar to this action. The decisions relied upon by defendants as well as the *Colson* decision arose on factual predicates such that, had the relief sought been granted, the effect would have been to coerce the release of sovereign lands or the unplanned expenditure of money from the public treasury. Here, such is not the case. The funds affected have already been committed by the sovereign for expenditure; the effect of injunctive relief would be only to bar expenditure in a particular way. Therefore, the policies underlying the doctrine of sovereign immunity have no application in this case.

#### B. Scope of Review.

■■ Review of the action taken by the EPA and the local government agencies is restricted in scope. This Court cannot disturb the administrative action unless it is "arbitrary, capricious, an

abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Further, the Court cannot overturn EPA's factual determinations unless the record before the EPA was devoid of substantial evidence to support the determination. See *Illinois Central R. Co. v. Norfolk & Western Ry. Co.*, 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966).

C. *Arbitrariness vel non of EPA's Affirmance of the City's Award to Norflor.*

■ The Court is of the opinion that the EPA did not act arbitrarily or at variance with the law in affirming the City's award of the contract to Norflor.

The gist of Grumman's case is that the ambiguity of Norflor's handwritten notation on its bid was so great as to make the bid unresponsive and that, therefore, the allowance of a subsequent clarification amounted to allowing a modification of Norflor's bid in contravention of 40 CFR 35.398–4(f), (h)(2).

There is no doubt that Norflor's bid notation was less than artfully drafted, and that it was subject to varying interpretations. Indeed the bidding instructions themselves were confusing and may have led to the problem here presented. But, it must be remembered that the Court sits in judgment twice removed from the initial determination that the bid was responsive. The Court may not substitute its judgment for that of the City or of the EPA, if the record supports the reasonableness of those decisions and supplies factual support therefor.

The language of Norflor's bid was not a patent deviation from the City's bid instructions.

Although Norflor's bid was ambiguous, it permitted the reasonable construction that it was inserted to insure strict compliance with the bidding instruction that all deviations be noted. Indeed such a construction was placed upon the language of that notation first by the City and later by EPA.

However, Grumman argues that such a construction was arrived at only subsequent to a clarifying letter submitted to the City by Norflor. Grumman contends that such a procedure amounts to modification of Norflor's bid prohibited by EPA regulations.[3]

The record reflects that the City Attorney arrived at the opinion that Norflor's bid was responsive prior to receipt of the letter of clarification and that the City and the Regional Board acted upon that opinion, although admittedly it was buttressed in that regard by the subsequent letter of clarification.

Given these facts, the Court cannot say that EPA acted arbitrarily or at variance with law in upholding the City's action.

The pertinent regulations do not define a responsive bid, nor do they define what constitutes a bid modification. Instead, the regulations place upon the local authorities the initial task of making those determinations. Local authorities are directed to consider both state and federal law in their deliberations. It is thus clear that the regulations impart a substantial amount of latitude and discretion to the local agency in such matters. Where such administrative discretion exists, the courts should not overturn an agency's determination if it has "'warrant in the record' and a reasonable basis in law." *N.L.R.B. v. Hearst Publications, Inc.*, 322 U.S. 111, 131, 64 S.Ct. 851, 861, 88 L.Ed. 1170 (1944).

Grumman has brought to the Court's attention several cases in which the courts have held that modification of a bid allowed after bid opening voids the bid award. However, those cases differ factually. Most involve the interpretation of regulations which specifically define certain matters as rendering the bid unresponsive. All involve a clearer case of bid deviation than that presented here. As noted above, the regulations

3. See 40 CFR 3.938–4, quoted *supra* in Note 1.

material to this decision contain no such specifics, nor may reference be had to the bid invitation to furnish such specifics, for the invitation itself is confusingly drawn.[4]

Under the pertinent regulation and factual circumstances of this case a distinction with a reasonable basis in law may be drawn between the clarification of an ambiguity and modification of a deviating bid.

D. *Effect of the City's Failure to Provide Written Findings.*

■ The City's failure to provide a written summary of its position with supporting legal and engineering memoranda constitutes a violation of EPA regulations. *See* 40 CFR 35.939(a). However, Grumman was apprised of the City's position and the supporting legal opinion at the hearing held before the Regional Board. Grumman had a full opportunity to respond at that hearing. Nothing in the record indicates any serious engineering questions arising with respect to Norflor's bid. Therefore, Grumman was not prejudiced by this technical default by the City. Since no prejudice resulted, the Court is unwilling to find a substantial violation of the regulation and to thereupon set aside the totality of the agency action taken in this case. *See* 5 U.S.C. § 706.

E. *EPA's Actions Subsequent to Affirmance of the Award to Norflor.*

■ While EPA's affirmance of the award to Norflor was within the law, its subsequent actions are another matter. It is undisputed that the EPA decision was rendered on July 24, 1975 and that Grumman notified EPA of an appeal to the Comptroller General on July 29. Yet on July 31, EPA advised the City that it was free to execute a contract with Norflor. The contract was executed upon that advice on August 1.

Such action by EPA was a clear violation of its own regulations as well as those of the Comptroller General.

EPA regulations provide for a 10-day waiting period after its decision before a grantee may execute a contract. 40 CFR 35-939(d). EPA ignored the regulation and advised the City to proceed on July 31, only seven days after issuance, much less receipt, of the EPA decision. Further, the Comptroller's regulations provide:

"When notice is given the agency that a protest has been filed with the General Accounting Office, award shall not be made prior to a ruling on the protest by the Comptroller General, unless there has first been furnished to the General Accounting Office a written finding by the head of the agency, his deputy, or an Assistant Secretary (or equivalent), specifying the factors which will not permit a delay in the award until issuance of a ruling by the Comptroller General."
4 C.F.R. 20.4.

F. *Appropriate Relief.*

■ In the opinion of the Court, nothing is more reprehensible, nothing more capricious, than EPA's flagrant violation of its own rules of procedure. EPA ignored not only its rules but those of the Comptroller General, who has authority in such matters and therefore the authority to set forth procedure to be followed.

It has been aptly said that those who deal with the government must turn square corners. The converse of that statement is more compelling. The government must turn square corners with those who deal with it. Citizens in this modern age of big government have pitiably small influence upon the behemoth structure of the government.

---

4. Indeed, Norflor's bid could have been considered unresponsive if Norflor had failed to note that Dravo's guarantee was not that called for by the invitation, even though all interested parties were aware of Dravo's retrenchment. See the language of "Addendum No. 6" set forth in text *supra*.

Such as they are, procedural regulations, by which the agencies are presumably bound, assuage the predicament of the citizen somewhat. They are designed to insure that the might of government is not used to overbear the citizens. Specifically, the regulations violated by EPA in this case can have no other purpose than to give a disappointed party time to assess his options and pursue available recourse before the government commits itself inexorably to a course of conduct. The courts, or other disinterested adjudicating tribunals, are the one place where the citizen stands equal with Goliath.

A continued pattern of such high-handedness as displayed by EPA could well lead eventually to the shunning of government business by reputable persons and firms, a situation which would auger greatly to the public detriment, and the public—the citizen in whom all power in this republic ultimately reposes and whose taxes provide the only monies governments have to spend—has the paramount interest in requiring that the competitive integrity of the governmental bid procedure be meticulously maintained.

Had these violations by EPA come to light at an earlier stage in this litigation, the Court might have been more disposed to enjoin further construction of the project, pending the outcome of the Comptroller's decision. However, given the present posture of the case and the positions of the parties at this time, the equities will not bear up injunctive relief. Grumman did not bring these matters to the Court's attention at the initial hearing on its application for a temporary restraining order.[5] Also, it must be noted that the City and Norflor were not notified of the appeal to the Comptroller General; while Grumman was not required to do so, that fact certainly bears upon the equities of the parties. The matters going to the procedural violations by EPA were raised

for the first time at the hearing on preliminary injunction, but the opportunity to consider such matters on the merits was lost due to the insufficiency of Grumman's notice of that second hearing to the defendants, particularly to the City.

Thus, the Court must find that Norflor at least has been acting in good faith in reliance upon an executed contract. It was not under any legal duty to refrain from proceeding with construction of the project. Norflor has at this time incurred substantial liabilities in performing its obligations under its contract with the City.

Arrogant as EPA's latter day actions are, the Court is persuaded that it would now be unjust to penalize either Norflor or the taxpayers, the latter having to ultimately bear here, as in all projects funded from government monies, the added cost of delay inherent in granting injunctive relief, particularly since the initial bid award for this needed public work was not unlawful. In short, EPA may thank the saving grace of circumstance for the final outcome of this litigation.

The foregoing constitutes the Court's findings of fact and conclusions of law. Judgment will be rendered accordingly.

## JUDGMENT

STAFFORD, District Judge.

This cause came on for final hearing before the Court on the 22nd day of September, 1975, and was duly submitted for consideration and decision. Upon the findings of fact and conclusions of law contained in the Court's opinion dated October 1, 1975, it is

Ordered, adjudged and decreed:

1. Defendant Russell E. Train, as Administrator of the Environmental Protection Agency, violated the regulations of the Environmental Protection Agency and the regulations of the Comptroller General in advising the City of Gaines-

---

5. Nor does the Court recall that EPA advised the Court at the August 7 hearing of

Grumman's July 29 appeal to the Comptroller General.

**590**

ville on July 31, 1975 that the City was free to award the contract for the Kanapaha Wastewater Treatment Plant to Norflor Construction Corporation-Sunshine Peninsula, Inc. without further delay.

2. Plaintiff's costs are hereby taxed against Russell E. Train, as Administrator of the Environmental Protection Agency, to the extent that the imposition of same may be permitted by law.

3. In all other respects, judgment is for the Defendants.