432 F.Supp. 242 (1976)
MACLEAN CONSTRUCTION COMPANY
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al., Farmers Home Administration of the United States Department of Agriculture, the City of Hancock, Michigan, a Municipal Corporation, Wesley Kangas, Jean Anderson, Chester Guidotti, Ted Jaasko, Roger Wolff, William Gaffney, Ben Ricchi and David L. Soulak.
No. M 76-60.
United States District Court, W. D. Michigan, N. D.
August 24, 1976.
*243 David F. Betz, Ludington, Mich., for plaintiff.
Brian H. Davis, U.S. Environmental Protection Agency, Region V, Chicago, Ill., of counsel, Frederick Huff, U.S. Environmental Protection Agency, Washington, D.C., Robert C. Greene, Asst. U.S. Atty., Grand Rapids, Mich., for defendants.
James Burren Brown, Lansing, Mich., for City of Hancock and other private defendants.

OPINION
MILES, District Judge.
This action arises out of a construction grant awarded on November 18, 1975 by the United States Environmental Protection Agency, Region V (hereinafter "E.P. A.") under Title II of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251 et seq. (Supp. V 1975), to the City of Hancock, Michigan. This grant is for 75% of the total construction costs (33 U.S.C. § 1282(a)). The project was the construction of a storm and sanitary sewer separation system. Funding was also expected in the form of a loan guaranteed by the Farmers Home Administration of the United States Department of Agriculture. A somewhat detailed exposition of the historical facts is necessary to a consideration of the issues presented.
The City of Hancock (hereinafter called "the City") issued an advertisement for bids for the project on December 8, 1975. Several bids were submitted, and upon opening on January 21, 1976, the plaintiff, Maclean Construction Company's (hereinafter "Maclean") bid was found to be the lowest (approximately $77,000.00 below the next bidder).
*244 Within approximately a month, three of the unsuccessful bidders filed protests of Maclean's bid with the City. The latter was claimed to be deficient in its failure to submit the following documents with the bid: E.P.A. Certificate of non-segregated facility, notice of non-discrimination in employment, non-collusive affidavit, list of proposed sub-contractors, and equal employment opportunity information. Maclean apparently submitted these documents within forty-eight (48) hours of the bid opening without changing its bid price.
On February 11, 1976, the City (through its City Council) adopted Resolution No. 3 which denied the protest of a competing bidder, Yalmer Mattila Contracting, Inc. "because the City of Hancock has determined that Maclean Construction Company is the low, responsible, responsive bidder on said sewer separation project." This resolution also "expressly waive[d] the informalities in the bid of Maclean Construction Company specified in the review of bids prepared by * * * Peckham Engineering, Inc. [the consulting engineers] dated January 28th, 1976 * * *." This latter determination (waiving of informalities) was purportedly made under provisions of the "information for bidders" and "advertisement for bids" which allowed the City to waive any informalities or to reject any or all bids.
Protest appeals were then filed with the E.P.A. Chicago Regional Office by the same three unsuccessful bidders. The E.P.A. Regional Administrator responded by letter dated March 26, 1976 to the Hancock City Manager stating that the procedure for protests in 40 CFR § 35.939 had not been followed, and that he therefore could not act on the protests at that time. The Regional Administrator thereupon specified three alternate ways by which the City could then proceed in the matter.[1]
The City adopted two additional resolutions on April 14, 1976. One (No. 5) authorized the mayor and city clerk to enter into negotiations with Maclean on the sewer project pursuant to E.P.A.'s March 26 letter-authorization of negotiation. The other *245 (No. 6) waived "any and all informalities in the bidding documents and proposal of Maclean Construction Company" and determined Maclean to be the low responsive bidder. On the same day, the City and Maclean executed a "Notice of Award." Maclean has alleged that within the following 10-day period (as specified in the Notice), it filed its performance and payment bonds and insurance certificates.
Two days later, on April 16, 1976, Yalmer Mattila Contracting, Inc. filed with the City a protest of the award of the bid and contract to Maclean.
On April 30, 1976, the E.P.A. Regional Counsel replied by letter to the City's attorney, who had earlier inquired about the meaning of "negotiated procurement." E.P.A. supplied its opinion on this point and suggested a specific procedure by which to use negotiated procurement under the circumstances presented.[2] This procedure was essentially to invite rebids after the prior deficiencies had been explained to all original bidders. The E.P.A. letter also stated that "in the present posture of the procedures to date, this Agency cannot endorse award of the contract to the present low bidder, according to the facts presently known to us." The letter had previously mentioned that all original bidders had failed to submit a list of proposed sub-contractors along with their bids,[3] accounting for the "presumed determination of non-responsiveness under applicable Federal procurement principles."
On May 5, 1976, the City passed two additional resolutions in this matter. Resolution No. 12 declared that the City couldn't enter into a contract with Maclean or anyone else until the E.P.A. concurred in the award of funds (as specified in Paragraph 40 of "Supplemental General Conditions") and until the City Clerk certified the contract as to the sufficiency of funds appropriated as required by Article XIV, Section 14.3 of the City Charter, and therefore expressly repealed Resolutions Nos. 5 and 6 (which had awarded the contract to Maclean). *246 Resolution No. 13 prescribed a "negotiated process of procurement" (consonant with E.P.A.'s April 30 letter) with new bids to be submitted by and opened on May 7, 1976. This resolution noted that "bids submitted January 21, 1976 are not responsive (in that they did not substantially contain lists of subcontractors as required by E.P.A. regulations)" and that the City had received E.P.A. authorization for the negotiation of a contract for the performance of project under 40 CFR § 35.936-18(b)(5).
Three bidders (Maclean, Mattila and Herman Gundlach, Inc.) submitted bids under this new procedure. Mattila was found to have submitted the lowest bid this time. Maclean having submitted a bid identical in amount to its January 21 one. Mattila's bid was almost $33,000.00 lower than Maclean's.
On May 7, the City passed Resolution No. 14 which awarded the contract to Mattila, after concurring with the engineer's "qualitative assessment, recommendation and qualification of Low Bidder." Maclean filed a protest of the award to Mattila dated May 13 and received May 17. The City held a public hearing on the matter on May 21, and on June 1, 1976, the City denied (via Resolution No. 15) Maclean's protest for the following reasons:
(1) Maclean did not file its protest within the time limits specified in the E.P.A. regulations (40 CFR § 35.939(b);
(2) Mattila's negotiated bid was responsive to the requirements of the negotiated procurement process outlined in the City's Resolution No. 13;
(3) The City had no contract with Maclean;
(4) Maclean's participation and acquiescence in the negotiated procurement process barred them from protesting the nature of the negotiated procurement process; and,
(5) The City adopted the determination made by its engineer on May 7, 1976 and the legal opinion of its attorney dated May 28, 1976.
On June 8, 1976, Maclean filed its further protest with the E.P.A. Chicago Regional Office which was denied by a determination dated July 12, 1976. The E.P.A. concluded that the City had properly denied Maclean's protest on the ground of untimeliness and therefore affirmed the City's denial and dismissed Maclean's request for review. This suit followed.
Maclean has named as defendants the E.P.A., the Farmers Home Administration (although no allegations of the complaint applied to them), the City, its seven City Council members and the City Manager. The claim made against E.P.A. is that it acted arbitrarily and that it capriciously determined, in its April 30, 1976 letter, that Maclean's original bid was unresponsive and "dictate[d] and mandate[d] to the City of Hancock that it vitiate the city's `Notice of Award' to plaintiff and the city's prior determination that plaintiff was the low, responsive, responsible bidder." Maclean claims that its due process rights were denied and that E.P.A. exceeded its authority in determining that its bid was non-responsive for failure to include a sub-contractor list without affording Maclean an opportunity to be heard as to whether or not such failure is such a material defect as will render a bid proposal non-responsive under federal rules and regulations, that such failure is but an informality which can legally be waived by the City and which was in fact waived by the City in Resolution No. 3; that E.P.A. had no valid protest by any other bidder before it upon which it could base its April 30 "letter"; that E.P.A.'s authority to determine protests is governed by 40 CFR § 35.939 and the Regional Administrator did not have any authority on April 30 to determine that Maclean's original bid was non-responsive; that there are no federal statutory laws or administrative regulations which provide for the award of any bid under the theory of "negotiated procurement"; and that E.P.A.'s April 30 action in determining Maclean's bid to be non-responsive impaired the contractual obligations between the City and Maclean. Further additional claims against E.P.A. were that it acted arbitrarily, capriciously, abused its discretion and did not act in *247 accordance with law in denying Maclean's protest filed with E.P.A. in June, 1976; that denying Maclean's protest deprived its procedural due process rights since the April 30 letter was not a determination of any protest then legally pending before it, and as a result thereof, the contract award to Maclean was rescinded by the City; and that E.P.A. didn't allow Maclean a hearing before regional administrator as provided in 40 CFR § 35.939(e)(2) after Maclean and its counsel had demanded such a hearing.
Maclean also claimed that the City breached its contractual obligations with Maclean by adopting Resolutions Nos. 12 and 13, and that the individual defendants acted outside the scope of their authority in adopting Resolutions Nos. 12-15.
Maclean's Complaint sought the court to direct the defendants to award the construction contract to Maclean, and to determine that the City's and E.P.A.'s denial of Maclean's protest were null and void, that Maclean's failure to submit a list of proposed sub-contractors with its bid documents on January 21 was not such a material defect as to render its bid non-responsive, and that E.P.A.'s April 30 letter to the City Attorney was unlawful and without any legal authority or precedent. It further sought a declaration that Maclean was the low, responsive and responsible bidder under its original bid, and that the City and the individual defendants breached their contract with Maclean.
This Court issued a temporary restraining order upon Maclean's application on July 19, 1976. The order enjoined the defendants from entering into and executing with Mattila a construction contract for the sewer system or from in any way approving the payment of any funds in connection therewith until further court order. It also restrained the defendants from allowing any construction work being started until further court order. The order also scheduled a hearing on Maclean's motion for a preliminary injunction for July 29, 1976 in Marquette, the designated place in the Northern Division. At that time, counsel for all parties appeared and were heard on the pending motion. All parties were afforded eight additional days to file supplemental briefs, and the issues are now considered to be submitted. For the reasons set forth below, the Court denies plaintiff's motion for a preliminary injunction.
Jurisdiction against the federal defendant, the Environmental Protection Agency, is grounded on Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 et seq (1970). The Sixth Circuit appears to this Court to have been inconsistent as to whether Section 10 of the APA constitutes an independent grant of jurisdiction. Compare Hunt v. Weinberger, 527 F.2d 544 (C.A.6 1975) (yes) with Bramblett v. Desobry, 490 F.2d 405 (C.A.6), cert. den. 419 U.S. 872, 95 S.Ct. 133, 42 L.Ed.2d 111 (1974) (no) and Chatman v. Norris, 401 F.Supp. 943 (E.D.Tenn.1975) (no). Nevertheless, in this case jurisdiction has also been alleged under 28 U.S.C. § 1361 thereby mooting the APA jurisdiction question.
E.P.A. has moved to dismiss on the ground that it is a non-suable entity and that the court therefore lacks personal jurisdiction over it, Rule 12(b)(2), F.R.Civ.P. Sovereign immunity is also asserted by the E.P.A. Several courts have held that the APA is a waiver of soverign immunity in cases to which it applies. International Engineering Co., Division of A-T-O, Inc. v. Richardson, 167 U.S.App.D.C. 396, 512 F.2d 573 (1975); Eastern Kentucky Welfare Rights Organization v. Simon, 165 U.S.App. D.C. 239, 506 F.2d 1278 (1974), rev'd on other grounds, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). Contra, Short v. Murphy, 368 F.Supp. 591 (E.D.Mich.1973), aff'd 512 F.2d 374 (C.A.6 1975) (issue not raised on appeal). In addition, the policies underlying the doctrine of sovereign immunity have no application here, where the funds affected have already been committed by the sovereign for expenditure; the effect of injunctive relief would be only to bar expenditure in a particular way. Grumman Ecosystems Corporation v. Gainesville-Alachua County Regional Electric, Water & *248 Sewer Facilities Board, 402 F.Supp. 582 (N.D.Fla.1975). In light of these factors, the Court will overlook the fact that the E.P.A. is sued as a defendant rather than its Regional Administrator.
The standard of review under the APA for administrative determinations of the type at issue here is contained in 5 U.S.C. § 706(2)(A): ". . . the court may set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." This does not mean, however, that the court may substitute its own judgment for that of the agency; rather, the court's function is limited. The Court of Appeals for the District of Columbia having had the most experience in considering government procurement questions has expressed it in the following manner:
"A court has no warrant to set aside agency action as arbitrary or capricious when those words mean no more than that the judges would have handled the matter differently had they been agency members. Judicial intervention must, instead, be rested upon a demonstration that the agency action has transgressed the statutory boundaries." Calcutta East Coast of India and East Pakistan/USA Conference v. Federal Maritime Commission, 130 U.S.App.D.C. 261, 399 F.2d 994, 997 (1968).
"If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1301 (1971) (footnote omitted).
In seeking a preliminary injunction, the plaintiff must show:
(1) that his case has the higher probability of success on the merits;
(2) that his damages are irreparable;
(3) that the balance of injury favors grant of the injunction;
(4) that injunctive relief is in the best interest of the public.
Garlock, Inc. v. United Seal Incorporated, 404 F.2d 256 (C.A.6 1968); Burkett v. Tuslaw Local School District Board of Education, 380 F.Supp. 812 (N.D.Ohio 1974). See Securities & Exchange Commission v. Senex Corp., 534 F.2d 1240 (C.A.6 1976). The instant case involves judicial review of administrative decisions. As such issues are questions of law, the court will consider them on their merits instead of merely their probability of success on the merits. As the underlying facts are uncontested, as they are here, and the issue is purely a legal one, the Court will not bifurcate the case into preliminary and final stages (See Rule 65(a)(2), F.R.Civ.P.).
Plaintiff Maclean challenges two actions of E.P.A. in this suit. One is the April 30, 1976 letter from the Regional Counsel (E.P.A. V) to the City Attorney discussing "negotiated procurement." The other is the July 16, 1976 denial of Maclean's protest of the City's award of the construction contract to Mattila Contracting.
The basic complaint about the April 30 agency action is that E.P.A. had no cognizable protest before it at that time, and therefore had no authority to "determine" that Maclean's bid was non-responsive. The Court observes, however, that the E.P.A. action did not purport to be the "determination" of any protest. The April 30 letter must be viewed in light of the earlier events, especially the March 26 letter. The March 26 communication, after stating that no reviewable protest was before the agency, outlined three alternative methods of proceeding for the City. First, the City could attempt to resolve the protests and follow the published procedures in 40 CFR § 35.939, thereby producing a reviewable record and protest. Second, the City could "conclude that no responsive responsible bids at acceptable price levels" had been received and could reject all bids and readvertise. This suggestion was apparently based on information in the protest materials which indicated that several of the original bids lacked some of the required documents at the time of bid opening. Third, *249 the City could engage in "negotiated procurement" under 40 CFR § 35.936-18(b)(5).
The City then seemingly decided on the third alternative, negotiated procurement with Maclean, as evidenced by Resolution No. 5 of April 14, 1976. After Mattila's April 16 protest of the Notice of Award to Maclean (also April 14), the City Attorney inquired of E.P.A. the meaning of "negotiated procurement." The challenged April 30 letter from E.P.A. constituted the agency's interpretation of this term and a suggested method of application to the instant circumstances. The agency opinion that:
"such negotiated procurement be carried out, so far as is possible, in furtherance of the principles of competitive nature of the bidding process which underlie the regulations in the sub-part here in question"
is not in the Court's view, "arbitrary, capricious, an abuse of discretion." The procedure set forth by E.P.A. permitting the bidders to correct such deficiencies as had rendered their bids non-responsive and to adjust their bid prices if necessary, appears the most effective method of reaching a quick resolution of the problem (as opposed to advertising all over again) consonant with competitive bidding principles underlying the governing regulations.[4] Therefore, the Court finds no "unlawful" agency action in the April 30 E.P.A. letter itself.
The other agency action sought to be reviewed here is the July 12 E.P.A. denial of Maclean's protest. That determination discussed each of issues raised in Maclean's protest. Maclean questioned the City's action on May 5, 1976 to proceed with "negotiated procurement" along the lines suggested in the April 30 E.P.A. letter. E.P.A. mentioned the time requirements for protests prescribed in the applicable regulations (40 CFR § 35.939(b)), and then stated that "[h]ad the Protestor availed itself of its right to protest at the appropriate time, the matter of the Grantee's manner of conducting the procurement in question could have been resolved prior to the award of the contract." E.P.A. held that the protest of the procedure used was not made within the one-week time limit specified in the regulations, and that the City properly denied the initial protest to it as untimely.
Maclean in its protest had also contended that the two other bidders on May 7 failed to meet a specified procurement requirement. E.P.A. found that the regulation specified had no application to the issue sought to be raised. Additionally, E.P.A. held that Maclean's protest of the May 7 award of the construction contract to Mattila was untimely, as the notices of protest were not delivered to the City until May 17, 1976. Maclean admitted as much in its protest to E.P.A., but the agency held that the regulations specifically provided that the risk of non-delivery of a protest within the time limits rests upon the protestor, 40 CFR § 35.939(b)(3).
Maclean also raised the question of the responsiveness of its original January 21 bid in its protest to E.P.A. The agency noted that this issue was first made known to Maclean on April 14 when the City resolved to award the contract by "negotiation" citing 40 CFR § 35.936-18(b)(5), which on its face applies only in situations where no responsive, responsible bids at acceptable price levels are received by a grantee. No protest was received within the one-week time limit of that date. E.P.A. further noted that even if May 5, 1976 were viewed as the time when the basis of the protest became known, the protest was untimely since it was not filed until May 17. E.P.A.'s overall decision upheld the City's denial of Maclean's protest as untimely. Keeping in mind the narrow standard of review of administrative action, we cannot conclude that E.P.A.'s denial of Maclean's protest was anything other than a proper agency decision within the boundaries of its own regulations, which, of course, it was bound to follow. There is no challenge here to the validity of the regulations establishing time *250 limits for filing protests, and there appear to be valid reasons for them: the prompt resolution of disputes in this type of project is beneficial to the public in completing the construction as quickly as possible for use of the facility itself and avoidance of additional costs due to inflation if a project is delayed.
Two further observations are in order in connection with the federal defendant. When in April the City resolved to undertake a negotiated procurement of the contract, Maclean did not protest the procedure because it apparently believed that the method would be to its own benefit. In fact, Maclean did not protest at the time of the May 5 resolution the revised (per E.P.A. letter of April 30) procedure of correcting deficiencies and resubmitting bids, also apparently because it still believed it was to be awarded the contract. The protest materialized only after Maclean learned on May 7 that it was not the successful bidder under the new procedure. This fact indicates to the Court that Maclean's disagreement is with the result reached, and not with the procedure itself. In addition, there was nothing in the E.P.A. regulations or in the City Resolution No. 13 of May 5 that prohibited Maclean from altering its bid price; it clearly was not "frozen" at its prior submission level. Maclean still had an equal chance with the other bidders to rebid; it was not a victim of its own inadvertence, negligence or lack of sophistication. For whatever reason, Maclean decided to submit the identical bid price even after being aware that its original bid (including unit prices) had been a matter of public record. Therefore, the particular procedure employed here under E.P.A. suggestion did not of itself inure to Maclean's detriment. Accordingly, as the Court has considered the claims against the E.P.A., and has found no fault with the challenged administrative actions,[5] the complaint is DISMISSED with prejudice as against defendant E.P.A.[6]
Maclean has also raised claims against the City of Hancock and its City Council members and the city manager. These are pendent to the federal Administrative Procedure Act claim against E.P.A. as there is no diversity of citizenship between the parties, and they are purely state law breach of contract causes of action. See Annot., "Revocation, Prior to Execution of Formal Written Contract, of Vote or Decision of Public Body Awarding Contract to Bidder," 3 A.L.R.3d 864 (1965). The Court notes that these parties defendant would not have been in federal court on these claims except for the fact that they arise out of the same series of events as provides federal jurisdiction against E.P.A. Thus, the state law breach of contract claims involve both "pendent parties" and "pendent claims." The Court agrees with the analysis of pendent jurisdiction made in a similar case by then District Judge Engel in Shaw-Henderson, Inc. v. Schneider, 335 F.Supp. 1203, 1215-18 (W.D.Mich.) aff'd, 453 F.2d 748 (C.A.6 1971). Because these claims involve strictly state law issues and because the issue of whether a contract was formed by the Notice of Award on April 14 is resolvable independent of any federal E.P.A. subsequent involvement via the challenged April 30 letter, the Court is of the opinion that the claims against the City of Hancock and the individual defendants should be dismissed, without prejudice, however, to any possible proceedings in state court.
In summary then, the current Temporary Restraining Order will be DISSOLVED, plaintiff's motion for a Preliminary Injunction is DENIED, defendant E.P.A.'s motion to Dismiss is granted with prejudice, the complaint against Farmers Home Administration is dismissed with prejudice, and the complaint against City of Hancock and the *251 individual defendants is DISMISSED without prejudice for lack of jurisdiction. The Clerk of the Court is ordered to present a Judgment to the foregoing effect in ten days.
NOTES
[1] The March 26 letter reads:

Dear Mr. Soulak:
The matter concerns a protest sought to be filed under 40 CFR Section 35.939 (December 17, 1975 ed.), arising under a construction grant awarded by the United States Environmental Protection Agency, Region V (U.S. EPA), under Title II of the Federal Water Pollution Control Act, as amended by PL 92-500, 33 USC Section 1251 et seq. (especially Sections 1281 and 1283 therein), to the City of Hancock, Michigan (hereinafter grantee). The Federal grant was made for the construction of a storm and sanitary sewer separation.
The record before me includes the following written submissions and numerous attachments thereto:
1. Protest Appeals by Yalmer Mattila Contracting, Inc., dated February 16, 1976 and February 17, 1976 (and telegram);
2. A Protest by Herman Gundlach, Inc., dated February 20, 1976;
3. A Protest and Protest Appeal by Kakuk Excavating and Construction Company dated February 24, 1976 (and mailgram).
From the record before us, it appears that neither the grantee nor the parties have complied with the procedures for protests outlined in 40 CFR 35.939(c) and (d). Therefore, there presently exists before me no proper grantee determination or record capable of review under the requirements of Section 35.939(e).
This matter is therefore referred to the grantee for such proceedings as may be appropriate in light of the following considerations.
If it is desired by the grantee and the parties to reach a determination reviewable under § 35.939, the procedures outlined therein should be observed. Upon the conclusions of such proceeding, if any, the matter may be presented here for review if appropriate.
It appears, however, from the submissions presented to me that the grantee may, upon consideration of all the circumstances, conclude that no responsive responsible bids at acceptable price levels have been received by it after the formal advertising conducted here. Should the grantee so determine, it may conclude that a rejection of all bids and readvertisement, will best serve the interest of the grantee and the public assuming that it has, by re-reservation or otherwise preserved the right to so reject, and assuming that such rejection would be appropriate under state law.
Alternatively, grantee may conclude that negotiated procurement under Title 40 CFR Section 35.936-18 best serves its interest and that of the parties and the public. Should the grantee so conclude, it may regard this letter as the prior written approval of the Regional Administrator required by § 35.936-18(b)(5), which approval is hereby given.
[2] The April 30 letter reads:

Dear Mr. Brown:
You have inquired, on behalf of your client, the City of Hancock, Michigan, as to what is meant by "negotiated procurement," as that term appears in Title 40 CFR Section 35.936-18(b)(5). It does not appear that any rigorous definition of the term exists. It is our opinion, therefore, that Section 35.936-18(b)(5) must be read, in its context, to require that such negotiated procurement be carried out, so far as is possible, in furtherance of the principles of competitive nature of the bidding process which underlie the regulations in the sub-part here in question, as pointed out in Section 35.939-18(b).
As I discussed with you over the telephone, this Agency would be prepared to accept as consonant with the above principles a procedure whereby the affected bidders were given equal opportunity to correct such deficiencies as had rendered their bids non-responsive. Because it appears that the failure to include a listing of proposed subcontractors is the common factor which accounts for the presumed determination of non-responsiveness under applicable Federal procurement principles, and because that factor may affect the price for which a bidder may offer to perform the contemplated project, it would appear that equity and considerations of fair and open free competition require that those bidders also be given the opportunity of adjusting their bid prices, if necessary.
In summary, then, it would be acceptable from this Agency's standpoint, if the affected bidders were advised, perhaps at an informal, joint conference, as to how their bids have failed to respond to specifications, and that their bids be returned to the respective bidders for correction of any deficiencies, and adjustment, if necessary, of the bid price.
The bidders may be advised that their bids may be re-submitted at a reasonable, pre-determined date and time certain, at which time the award could be made to the then lowest, responsive, responsible bidder.
It is, of course, our position that in the present posture of the procedures to date, this Agency cannot endorse award of the contract to the present low bidder, according to the facts presently known to us.
We sincerely hope and trust that these suggestions will be of some assistance in resolving the unfortunate impasse which appears to exist with regard to the award of this contract. Please feel free to contact me or Brian Davis, an attorney on my staff, if you or any of the interested parties have any question or comment.
[3] Page 4 of "Information for Bidders" provides:

"BIDDERS are required to list all subcontractors expected to be used on this project. No subcontractors are to be employed, then it should be so indicated."
[4] 40 CFR § 35.936-18(b) provides:

"All negotiated procurement shall be conducted in a manner to provide to the maximum practicable extent open and free competition appropriate to the type of project work to be performed. * * *"
[5] We find no merit to Maclean's claim of a wrongful denial of a requested hearing upon protest to E.P.A. under 40 CFR § 35.939(e)(2). See 40 CFR § 35.939(k), which allows for summary dismissal of a protest that is deemed frivolous or without merit.
[6] Since no actions of the Farmers Home Administration were complained of, that defendant is also dismissed with prejudice.