**S.A. HEALY COMPANY, Plaintiff,**

v.

**METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, et al., Defendants.**

No. 84 C 1238.

United States District Court,
N.D. Illinois, E.D.

March 8, 1984.

James L. Fox, Donald P. Colleton, Abramson & Fox, Chicago, Ill., for plaintiff.

Allen S. Lavin, Chicago, Ill., for Sanitary Dist.

Dan K. Webb, U.S. Atty., Elizabeth Stein, Asst. U.S. Atty., Chicago, Ill., Jesse

Carrillo, Environmental Defense Section, Washington, D.C., for E.P.A.

Jerome H. Torshen, Robert J. Slobig, Jerome H. Torshen, Ltd., Chicago, Ill., for Klein Const. Co.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

S.A. Healy Company ("Healy") has sued Metropolitan Sanitary District of Greater Chicago ("MSD"), its Purchasing Agent George Wahl ("Wahl"), United States Environmental Protection Agency ("EPA"), its Region V Regional Administrator Valdas Adamkus ("Adamkus") and Klein Construction Company ("Klein") for judicial review of a February 6, 1984 determination made by Adamkus for EPA relating to an MSD construction project to be funded in principal part by the federal government. Healy, EPA and Klein (the successful bidder as a result of Adamkus' determination) have moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, Healy's motion is denied and the Klein-EPA motions are granted.

### *Facts* [1]

On May 4, 1983 MSD solicited bids on a contract for blower facilities at its Calumet Sewage Treatment Works. Healy, Klein and six others submitted bids. When the bids were opened June 7, Healy's adjusted bid [2] of $16,733,846 was the low bid with the possible exception of the following

"alt[ernate] bid" of $16,652,390 included on the last page of Klein's bid [3] just below the signature lines:

| Alt Bid Using Loutma Bid—If Acceptable | | |
| Voluntary Alternate | Loutema Blowers | |
| --- | --- | --- |
| Contract bid price | | 14,000,000.-- |
| Guaranteed max power [4] | | 2,890 |
| GMPC – 2500. = | 390 | HP |
| HP differential = | | 2,652,390.-- |
| Contract bid price + bid adjustment | | 16,652,390.00 |

On August 23 Wahl (acting for MSD) rejected the various protests by Klein and other bidders, finding Healy's bid "the low, responsive, responsible bid for MSD contract 77–289–2M." It is highly significant for current purposes that in turning down the protests by two of the bidders other than Klein, Wahl *specifically* approved (1) the use of Lotema Corporation ("Lotema") [5] equipment by Healy for its bid and (2) the guaranteed maximum power consumption level of 2890 horsepower at which Healy's bid (*and* Klein's alternate bid as well) specified the Lotema blowers would perform.

On September 1 Klein and the two other protesters appealed to EPA (on differing grounds) from MSD's adverse determination. After full briefing and other written submissions, EPA's Office of Regional Counsel issued a Report and Recommendation that was adopted by Adamkus February 6, 1984. Based on the Report and Recommendation Adamkus (acting for EPA):

---

1. There is no dispute at all as to the relevant facts. As a result the ordinary rule that on cross-motions for summary judgment each motion is to be considered separately, with the party opposing the motion entitled to all reasonable favorable inferences from the facts (*Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984)), really does not come into play.

2. In each case the "adjusted bid" price was the sum of (1) the contract bid price and (2) the number obtained by multiplying the blowers' GMPC (see n. 4), minus 2500 HP, times 3 (the number of blowers needed) times $2,267.

3. In the body of Klein's bid papers, on the page before the signatures, the adjusted bid price was specified as $20,385,770, far in excess of Healy's bid.

4. This factor, "guaranteed maximum power consumption" or "GMPC," was identified in both those ways in MSD's bid proposal form. It is a measure (in horsepower or "HP") of the performance standard of the blowers used.

5. No one disputes the obvious fact that Lotema was the "Loutma" and "Loutema" referred to in Klein's alternate bid.

(1) affirmed MSD's decision to dismiss the other protests but

(2) sustained Klein's protest, designating it and not Healy the "low, responsive, responsible" bidder and returned the matter to MSD to award the contract to Klein.

This action followed.

### Standard for Review

This action is brought under the judicial review section of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. MSD invites this Court to decide that *its* determination in Healy's favor had a rational basis—but that would amount to an impermissible de novo review of EPA's determination to the contrary. Instead the question for this Court is the quite different one whether *EPA* had a rational basis for deciding that MSD's determination *lacked* a rational basis.

As our Court of Appeals said last year in *Wisconsin Electric Power Co. v. Costle,* 715 F.2d 323, 325 (7th Cir.1983) (quotation paraphrased to track the present case):

Our review of the [EPA] decisions is governed by the judicial review section of the APA, see 5 U.S.C. § 706.... [T]herefore we can disturb the EPA's decision only if the agency acted beyond the scope of its statutory authority, or in an arbitrary or capricious manner, or in violation of [MSD's] procedural rights.

That decision cited to the seminal decision in *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–17, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971), which made plain that in circumstances like those presented here the EPA decision is "entitled to a presumption of regularity" (*id.* at 415, 91 S.Ct. at 823), though it is to be subjected to a "thorough, probing, in-depth review" (*id.*). Under *Overton Park* that

required review involves three steps, which in terms of this case are these:

1. . EPA must have acted within the scope of its authority.[6]

2. EPA's decision must not be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law ..." (*id.* at 416, 91 S.Ct. at 823). As the Court went on to say (*id.*) (citations omitted):

To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

3. EPA must have followed the necessary procedural requirements.

This opinion will not conform to that sequence, dealing instead with the last *Overton Park* inquiry first. It does so because Healy's argument in that respect—that Klein's protest to EPA was not timely—is claimed to be jurisdictional. Were that really true, the issue would of course be one to be addressed at the threshold.

### Timeliness

■ Here the combatants point to two different subsections of EPA's regulation (40 CFR § 35.939), each emphasizing the word it says controls. Healy refers to Subsection (e)(1):

Any such request [for review of MDS's determination] ... *must* be received by the Regional Administrator within 1 week after the complaining party [Klein] has received the grantee's [MSD's] determination of the protest.[7]

EPA and Klein rely on the permissive (not mandatory) language of Subsection (f)(7):

---

6. That is unquestioned here, except to the extent Healy's "jurisdictional" argument might be treated at this point. Because that contention is procedural in nature, it will instead be dealt with under the third *Overton Park* requirement.

7. That timetable was admittedly not met by Klein's September 1 protest of MSD's August 23 decision.

A protest *may* be dismissed for failure to comply with procedural requirements of this section.

Healy's argument that the requirement is jurisdictional—and that EPA is therefore without power to review MPL's determination because Klein did not present its protest within the week—is empty. Both EPA and Klein adduce a number of instances in which EPA has exercised its discretion to review like protests submitted after the specified one-week period had expired. EPA thus applies the "may be dismissed" provision literally—surely a permissible reading. It is black letter law that, *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965):

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.... When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

Because EPA's interpretation of its own regulations is unquestionably non-arbitrary, that really concludes the issue.

Moreover, even Healy recognizes (as it must) that EPA has a sua sponte power of review of just such questions under 40 CFR § 35.935–2. Healy urges that is irrelevant because EPA did not in fact purport to act sua sponte here. But what Healy fails to perceive is that EPA's sua sponte power has a different cutting edge: It would be wholly anomalous to say EPA can act outside the one-week period sua sponte to correct a flaw in a contract award, but EPA is powerless to do so at the behest of a protester who has called the flaw to its attention. Thus the very existence of the sua sponte power tends to confirm the reasonableness of EPA's reading that the one-week period for protests is not "jurisdic-

tional" or "non-waivable," but is rather a permissive (non-mandatory) ground for dismissal that it is not duty-bound to exercise.

Finally in this area, Healy seeks to rely on three District Court decisions, *BSP Division of Envirotech Corp. v. United States,* 471 F.Supp. 958 (D.N.J.1979); *New Ikor, Inc. v. McGlennon,* 446 F.Supp. 136 (D.Mass.1978); *Maclean Construction Co. v. EPA,* 432 F.Supp. 242 (W.D.Mich.1970). However they give Healy no real comfort:[8]

1. All three cases reconfirmed the "arbitrary and capricious" standard for review of EPA's decisions, as stated in the APA and articulated in *Overton Park.*

2. Most significantly, all three simply *upheld* EPA's decision to *dismiss* a protest as not being irrational.

Those decisions thus dealt with and upheld EPA's exercise of its "may be dismissed" power—a far cry from supporting a *reversal* of EPA's decision *not* to dismiss, as here.

There is thus no validity to Healy's "jurisdictional" contention. This opinion can turn to the merits of EPA's decision.

### *Klein's Alternate Bid*

Under the circumstances of this case Klein's alternate bid, though rough-hewn, is as plain as plain can be. It was not, as Healy argues, either qualified or conditional or ambiguous. It clearly changed only one thing in the terms of the higher bid contained in the body of its proposal form: Lotema equipment was substituted for the other blowers contemplated in Klein's costlier proposal. Having accepted Lotema equipment for purposes of the Healy bid[9], MSD and Wahl could not rationally find them unacceptable as embraced by Klein's alternate bid.

---

8. Although the difference may or may not be significant in legal terms, it may be noted that two of the three cases (excepting only *New Ikor*) involved the time period for protests to a *grantee,* not to *EPA.*

9. Indeed *six* of the eight bidders (including both Healy and Klein) used Lotema blowers for their bids (as to Klein, for its alternate bid). There is no question those blowers conformed to bid specifications.

What the preceding paragraph demonstrates is that this case would pass even the more stringent (and erroneous) criterion voiced by MSD—that *its* decision lacked a rational basis. A fortiori EPA's decision passes muster under the proper standard: *EPA* surely had a rational basis for deciding MSD *lacked* a rational basis for its decision.

This opinion will not pause on the several other nit-picking, less-than-makeweight reasons stated by Wahl on MSD's behalf, or advanced by MSD before EPA or this Court (see Healy Mem. 21–23 and R.Mem. 17). They are really not worth discussing, for to state them is to reveal their poverty. Suffice it to say this Court has considered each of them and has found EPA could rationally have found them—both individually and collectively—to be without rational support.[10]

### Conclusion

There is no genuine issue of material fact, and EPA and Klein are entitled to a judgment as a matter of law. Healy's motion for summary judgment (supported by MSD) is denied. This action is dismissed with prejudice, and MSD is ordered to comply with the Adamkus-EPA February 6, 1984 determination and to award the contract to Klein.

---

**10.** When litigants (here MSD-Wahl in the first instance, via Wahl's August 23 ruling, then Healy) advance a set of contentions that do not even approach the level of speciousness, a court might well be disposed to view the litigants' more serious arguments through the same lens, hence more dimly. As the earlier text discussion reflects, this Court has dealt with Healy's principal arguments on their own merits (or more accurately, lack of merit), without (to mix the earlier metaphor) tarring them with the brush of the poor arguments rejected in this paragraph of the text.